Now we will turn our attention to the United States versus Randal Vasquez Munoz, 24-2918. Whenever you're ready, Mr. DeRuzo. Take your time. Good morning. May it please the court, Joseph DeRuzo on behalf of the appellant, Randal Vasquez Munoz. I'd like to reserve five minutes for rebuttal.  Your Honor, I'd like to start with the response to the court's docket text asking the parties to be prepared to discuss this court's case law regarding Section 7504A and whether it presents a question of subject matter jurisdiction. I reviewed, I put into Westlaw and proceeded to shepherdize every citation to 7504 that this court has. Came back with about 10 or so hits. Reviewed all of them. Nothing spoke to whether it's subject matter jurisdiction. I believe my brother counsel will probably agree with that. And that being said, I believe that this court is, and this panel, is free to chart its own path. Basically, and I submit, you're going to have to choose between Miranda or Prado. I suspect the 32-31. Say the answer? Or just the text of 32-31. Sure, sure. But for, I don't think I can say it any better than the D.C. Circuit said in Miranda. I think the D.C. Circuit's opinion in Miranda really hits all the points. But one thing to me that I think strikes and hits the hardest is that 7504 is titled jurisdiction and venue. From my perspective, subsection B, which talks about venue, is a discussion about which particular district court the trial is to be had or the litigation is to be had. Versus subsection A, it talks about district courts writ large, the ability of the courts to adjudicate the matter. I think Congress knows when it uses the terms jurisdiction and venue that it talks about the court's subject matter jurisdiction. It has done so in other instances throughout the United States Code. And I submit that that logic applies with full force here, which is consistent with the D.C. Circuit's opinion in Miranda. Do we need to go down this road at all to resolve this case? No. If the court were to hold that the MDLE provision exceeds Congress's authority under the Define and Punish, then there would be no need to hold an evidentiary hearing to prove for the government to prove up whether the vessel was subject to the jurisdiction of the United States. So, in theory, if the court wanted to do that, it could. But what I submit what should have been done and which is done in particular consistent with the 11th Circuit, which from my perspective, you know, addresses the majority of these MDLE cases, is you have an evidentiary hearing, a pretrial evidentiary hearing, where the government has to prove up the statutory prerequisites. If it fails to do so, then pursuant to the terms of the statute itself, the case is dismissed, which I provided supplemental authority to the trial court. And it's included in the appendix, Judge Altman's decision in the Menas-Espadrilla case, where the government, through a footfall, apparently, failed to prove up the statutory factual points. And Judge Altman dismissed the case. Actually, which I actually do believe ultimately is what happened in the Prado case as well. The Second Circuit included that those statutory factors were not properly in the record and then vacated the decision, the convictions in Prado. So, I submit that's what should have happened. It didn't happen. I requested evidentiary hearing on more than one occasion. I even provided the Menas-Espadrilla case to the district court, saying this is what the evidentiary hearing should look like. And this is what happens if the government, you know, proceeds to not prove up the requirements. Unfortunately, that never happened. And I would submit that at a minimum was error. But this court, you know, in determining that it is subject matter jurisdiction, then obviously that hearing would need to happen. If the court were to go on the concept that it doesn't touch on subject matter jurisdiction similar to the First Circuit or the Second, then there wouldn't be a need to hold the evidentiary hearing. And I submit that that's how it would look. But this court has to make that decision on which side of the circuit it wants to fall on. Whether or not it goes to subject matter jurisdiction or the element of the offense, would you concede that Congress has the authority, and maybe you wouldn't concede this, to pass legislation that would reach as far as a stateless vote in international waters? You wouldn't concede that. No, I would not concede that. I would say that if the stateless vote is committing an act of piracy, not a problem. If the stateless vote is committing an act of an offense of the law of nations, human trafficking, genocide, something along those lines, not a problem. But you have a foreign state, arguably stateless vessel, with foreign individuals that's committing a, arguably committing a drug trafficking offense, I would not go. That is the position of your brief. Yes. It's not universal jurisdiction. And so as a result, you have the limitations on international law. One of the arguments you also make is that the MDLEA is inconsistent with Congress's power because it transcends international law. Why would Congress be limited in the strict legal sense by international law? Why couldn't Congress pass a law that would be inconsistent with international law? How can the Constitution prevent that? And so I would submit this. When you have the defined and punished laws, it has the piracies, the felonies on the high seas, and laws against the offense of nations. The piracies and on the high seas, those two bookends were at the founding under international law. And felonies on the high seas, by its very definition, the high seas don't belong to any country. They belong to every country. There's an international law, freedom that navigation. So the high seas provision, I submit, inconsistent with the First Circuit's de Villa-Reyes one opinion, that operated as a limitation, international law. That was vacated. It was vacated. But notwithstanding that it was vacated, I do believe that the initial panel got it right. Does that matter? Well, it's one thing. John Boncord didn't think they got it right. That's true. But you had some distinguished jurists who dissented. So for what it's worth, it may not be worth much to this court. But I think at a minimum, I think we all can agree it's at a minimum substantial food for thought. It is indeed. We have to shoot over it and shoot over it. But turning to, here's what I think part of the big rubble was, is the master of the vessel was Colombian. Everyone can agree on that. He had documentation to prove that. Now, what happened exactly, I don't know. And now we are three Article III jurists and two halfway decent criminal appellate attorneys can have an interesting and elevated discussion about text of the MDLE, what it means, what its contours are. I'd be very surprised that that level of consideration is taught to the Coast Guard. And that level, the individuals who are interdicting the individuals on the high seas, this has to be done in Spanish. I'd be very surprised that the individuals who are having the conversations are versed in legal Spanish. And then I'm also very surprised that the individuals receiving the communication in Spanish are really able to understand what's going on. So when the master of the vessel said that he was Colombian, my perspective, that is a claim of nationality. And that means the vessel was taxed onto his nationality that is Colombian. But what authority in any jurisdiction do you have that the nationality of the master of the vessel is the nationality of the vessel? Because I would submit under the United Nations Convention on the Law of Seas, I believe it's Article 91, that allows for small vessels to be determined by the law of that state, which is why if you have a 10-foot dinghy, you don't have to register your 10-foot dinghy. And then so if I'm on a 10-foot dinghy with a 10-horsepower engine on it and I'm out 13 nautical miles and I'm fishing, the fact that the Coast Guard can come up and say, what is the nationality of this vessel? I would expect that my response, not knowing the MDLA, would be like, I'm American. What do you mean? And so these contours of what actually happened out there is why you need to have the evidence you're hearing. Because if the questions weren't asked properly or if the response from the master of the vessel was something like, I don't understand what you're asking, can you explain it to me? If something along those lines happened, I think these are very important facts because the statute by its term requires that an individual authorized to enforce U.S. law makes the appropriate claim and makes the appropriate request. And the failure to do so is fatal, which is what happened in the Prado case. Okay. The United States has not joined the Convention on the Law of the Seas. Is that correct? I believe it's not on the Law of the Seas, but I would say that I think the EU and 160 plus nations have. So that would represent customary international law, which was detailed in the 11th Circuit's Balzac-Pratado case that talks about what it takes for something to qualify as international law. And the fact that the United States may not have joined that particular one, there is a worldwide consensus. In contrast to the Treaty of San Jose, which the government cites you, which the United States has joined, but many countries, including Colombia, have pushed back and won't sign it, viewing it as a violation of their sovereignty. Essentially, what you're saying is, despite very clear United States law, a duly enacted statute by Congress that specifies how the Coast Guard is to determine the nationality, if any, of a vessel, the Coast Guard should apply an international treaty to which the United States is not a signatory. Yes, because that is consistent with international law, and international law cabins in the government's ability under the Define and Punish Clause. To conclude otherwise, there will be no limiting principle. If Congress were to pass a law that said drug trafficking is an international problem, and therefore the United States has jurisdiction over any vessel, no matter where it's found, to prevent this scourge, and then the Coast Guard proceeds to go up the Amazon River and then arrest some individuals, I would submit that that would violate international law. You would have a substantial problem. So there has to be limitations on Congress's ability, and I submit those limitations are international law. Otherwise, to say the Supreme Court in the Microsoft case, American law does not rule the world. American law has limitations. And what are the limitations? International law. So why wouldn't the language subject a vessel subject to the jurisdiction of the United States, why wouldn't that be the limitation that you're arguing doesn't exist? Say it again, Judge McKee. Why wouldn't the language in the MDLEA that the vessel has to be subject to the jurisdiction of the United States, why wouldn't that be a sufficient limiting principle? Because Congress couldn't pass a law that would allow the Coast Guard to seize a British ship or a Spanish ship in international waters because they're not international waters. They're not subject to the jurisdiction of the United States. A stateless vessel is arguably very different. Well, I think you have to turn to subsection C1A, that's a vessel without nationality, which is the provision in the indictment that the government proceeded on. And then in turn, you have to look to the statutory definition or subsection D as to what the definition of the vessel without nationality is. And that's where the problem becomes, because the statutory definition of a vessel without nationality is more expansive than what would have been allowed or what should be allowed under international law. And that's basically the Duvalier-Rios case in a nutshell. And I can't say it any better than they did.  So walk me through, how should this case have proceeded if we have an evidentiary hearing? You have the evidentiary hearing. Right. The government calls the individuals who interdicted the vessel and then proceed to call the individuals who questioned the master of the vessel. Right. And then that individual needs to prove up that he was an officer of the United States and that he was authorized to enforce the applicable provisions of the United States law. Let's assume all that's true. You got a Coast Guard captain or whatever out there. And he's speaking to these fellows on the boat. And all they get is one gentleman saying, I have a Colombian ID card. That's what you would have at the evidentiary hearing, right? Actually, no. I believe the evidentiary hearing, all three of them identified where they're from. Right. But the only person who had any ID with him and the master of the boat was a Colombian with a Colombian ID card, right? Yes, yes. And so under international law, traditionally, an oral claim of nationality is sufficient. And actually, the language of the statute itself talks about an oral claim of nationality or registry. So my view of the statute is the or is disjunctive. It can be proven up by an oral claim of nationality or an oral claim of registry. So let's assume the district court says, OK, that's enough. This is a Colombian vessel. What do we do now? Then the Coast Guard should have called Colombia and asked for a statement of no objection, which is allowed under C1 cap C.  Registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States. Right. And once once that happens, which is consistent with this court's case law, the two cases that I talked about in depth in the brief actually had a statement of no objection. One from Panama, I believe. The other one, I think, was Colombia. So the Coast Guard knows how to do this. And it's my understanding that there's some case law that stands for the proposition that it can be done at any time, even up to or right before the evidentiary hearing on the matter. So in other words, it can be done after the fact. And so and so that's what the evidentiary hearing should have looked like. And if it didn't go according to to to plan pursuant to the menace, Asperia and then the Prado case, the government loses. So that would have to happen in every case of this ilk. Yes, yes, yes. Which is standard operating procedure in the 11th Circuit. It's my understanding. It just happens. It happens automatically. If the defendant contests jurisdiction, because in theory, a defendant can stipulate to the facts that prove up your jurisdiction. Right. But if the defendant is unable or unwilling to do that, then it's the government's burden as the because as the government's burden to prove up jurisdiction on these cases. So, with that being said, thank you for your time. Sleeper. Good morning, Your Honor. Adam Sleeper for the United States. I'm going to touch on subject jurisdiction briefly. I'll be candid. I don't have a whole lot to add to subject matter jurisdiction as well. I do think that the question before the court is whether or not Prado is better reason than Miranda. And the government submits that the court should follow Prado. There's a few points that I would just accentuate. I think one of the points where Prado was responding to Miranda, it talked about Miranda's contention that because Congress was concerned with comedy, it must have been that Congress intended this to be reviewed independently by judges at all stages of the proceedings and couldn't be waived. And that's why it should be subject matter jurisdiction. Prado pushes back on that, saying that there's not a textual basis for that. And the executive branch is well positioned to address any sort of comedy concerns. And just one additional point I want to make on that is you see that I think Prado has the better view of that for an additional reason. And that's when you see that Congress added these binding certifications within the MDLEA. Those are certifications the executive branch can bring, saying that there was a determination by a country that can't be challenged by the defendant on basis such as a wrong person was asked or there's any sort of inaccuracy or anything like that. So I think even beyond what Prado pointed to, Congress was looking more to the executive branch than the judicial branch to be enforcing these comedy concerns. And certainly while there is this issue here, there's nothing in the statute that would support a view that Congress felt in some way about this, that it had to be non-waivable, had to be independently considered by judges at every stage of the proceeding.  What about, Mr. DiRuso, touching on the concept of the small boat or small vessel, where the normal registration requirements in displaying visibly a flag or some indicia of nationality of the vessel, not the people on it, that that does not apply when you've got a small boat or a small vessel. And if that's true, then the fact that this boat did not have any indicia of nationality doesn't mean anything. And I'm not sure I'm that convinced that the nationality of the people on the boat, at least the one guy on the boat, I'm not sure you can attach his nationality to the registry of the nationality of the boat. But if I go to Panama and charter a boat and go sailing international waters, just because I'm driving a Panamanian boat doesn't make it, because I'm from the U.S., doesn't make that Panamanian boat a United States boat. How do you respond to that argument? I have three, maybe four points in response to that. One, I entirely agree with your statement that who the master is doesn't show the nationality of the boat. Assuming I had any sort of skills piloting a boat, which I am not going to pretend I do, if I go and take someone's boat or I'm hired to be in charge of someone's boat, that doesn't in any way change the nationality of that boat. Two, I believe we addressed this in the footnote of our brief, this exception for the smaller boats was created because there was a contemplation that these boats wouldn't be out on the high seas and would be closer to shore. And so that's why you would have a system for ensuring that the nationality of the larger boats that would be out at sea could be verified. And that leads into my next point, which I think… Is this a small boat? Would this fit the boat here? Would that fit the definition of those small boats? I think he argues in the brief that it would. I'm just not sure. Court's indulgence? Your Honor, I'm not certain. Okay, maybe you can submit a 28J. I will. It seems to me that's very important for the issue of the registry of the boat, because if it's a boat that is not one of the stateless vessels, it seems to me we're in a very different arena than if it is a stateless vessel. Well, so I have two more points, which I think may ameliorate somewhat the court's concerns. The government also advanced in its brief an argument. The point of nationality is that a state is both willing and able to take responsibility for that boat. So if a state is not able to verify the nationality of that boat, then the vessel is not entitled to claim that nationality. And that makes logical sense, because when you think about it, if a vessel claims nationality and only the claimed nationality can exercise jurisdiction over the boat, then no one else can. But if that nationality also can't confirm it, they also can't exercise nationality over the boat. And so in order for this nationality to be claimed, the government submits that there has to be some sort of verification. But I do want to – and maybe I should have addressed this point first – is what this turns on is this is an argument about 70502D1C. And that's where a claim of nationality is made and contact is made with the state, and the state, for whatever reason, does not respond or cannot verify. That's not the situation we have here. The government has affirmatively stated we did not do that. And so, frankly, it doesn't matter whether 70502D1C were unconstitutional, because we say that no claim was made. But if a claim was made, there was no contact made. There was no request. 70502D1C is just not implicated in the procedural posture we have. Well, it's not just that you say no claim was made. The plea agreement says no claim was made. Correct. Correct. So even beyond that. So with the plea agreement, the way the plea agreement is set up, first, if you look on, I believe – I don't have the page in front of me, but it lays out the elements of the charge. Included in the elements of the charge are that it's a covered vessel. There's a footnote there to say this isn't really an element. It's a pretrial thing. But it's included in the things that we're agreeing to. If you then go to the statement of facts, it very clearly tracks 70502D1B, where there is no claim made, not 70502D1C. Now, I know defense counsel pushes back a little bit on – in his brief as to whether or not it's sufficient for that finding because the stipulated facts say that the U.S. Coast Guard asked this rather than a U.S. Coast Guard law enforcement officer authorized to do this. I think the court can look to the statutes to see that the Coast Guard is authorized to enforce these laws. And certainly I think there's a sufficient factual basis in that plea agreement where the defendant specifically stipulated that these are the elements, including that it was a covered vessel. Even in the scenario that Mr. DeRusso asserts applies here, which is because of the nationality of the master of the vessel, the Coast Guard was obligated to reach out to Columbia to get a statement of no objection. Don't we know, based on the stipulated facts here, exactly what would have happened if the Coast Guard had reached out to Columbia? They would have said, there are no flags flown, there's no registration document, no hall markings, and no other signs of nationality. Can you verify that this is your vessel? And Columbia would have said, of course not. What could we use to verify that? What could possibly happen even under the 705 D1C scenario, other than Columbia saying that it can't claim the nationality? Your Honor, you may very likely be right that that would be the outcome. I don't know that I can say 100% that would be outcome. It certainly seems likely that that would be the outcome here. But I don't know that I'm in a position to agree that that would be 100% the case, what would happen. To talk about the evidentiary hearing, there were no disputed facts here based on the defendant's filing. He only contended that an evidentiary hearing was necessary if the government disputed, one, that the defendant had a Columbian identification card, or two, the Coast Guard did not reach out to Columbian officials. And the government did not contest any of those facts. The government said, in response, that those facts do not change anything here. There is still jurisdiction. And I know... Because the Columbian ID card is not enough to establish that. It's not a claim of nationality, so there was no need to reach out. And the district court resolved that argument, resolved it in the government's favor. That's another issue that the defendant did not appeal. Well, different case. That's an issue that the defendant did not challenge on appeal. There is no argument on appeal that those identification documents do, in fact, constitute a claim of nationality under the MDLEA. Now, I would note that for the first... In various filings, there's some case law thrown out about oral claims. But the very first time the defendant actually says, I made an oral claim of nationality, and I went through the brief below, I went through the opening brief here, is in his reply brief on appeal. Otherwise, there is no assertion in this briefing that there was an oral claim of nationality anywhere else. So, this is what was presented to the district court was that we have an identification card, and the government didn't reach out. And the government said, yes, you're absolutely right. That's not a problem. And the defendant said, unless you contest those issues, no need for an evidentiary hearing. And as the defendant says here, there's no need for an evidentiary hearing if the defendant doesn't contest the facts. Further, I would note, and this is maybe a subsidiary point, the district court didn't actually make a factual determination at this point that the vessel was a jurisdiction subject to the jurisdiction of the United States. It denied the various legal arguments that were being made by the defendant, explained why they lacked merit. But there was no actual factual finding entered at that time. And we were still in the pretrial posture. So, the court could still have done that in advance of trial. Instead, the defendant decided to enter into a plea agreement and stipulate to all the facts that showed that there was jurisdiction. What were those facts that I'm unclear? The facts that were stipulated, Chair, that showed that the West jurisdiction, stateless vessel in international waters. Is there anything else, or am I wrong about that? I. It's indulgence and I can. I don't want to take your time. You can do a 28 day letter. As to that also, John, I have it right here. So, it was a stipulation and just for the record, international waters is not actually a requirement under for purposes of determining whether a vessel is subject to the jurisdiction of the United States for purposes of the statute. So, but we did, in fact, get a stipulation that it was. In international waters. The Coast Guard boarded the vessel determined there were 3 occupants, 2 nationals of Costa Rica, including the defendant in a Colombian national consistent with the identification for the documents. The vessel had no flags flown, no registration documents, no whole markings and no other signs of nationality. The US Coast Guard asked to the master of the vessel was all the documents, including the defendant claim to be the master of the vessel. The US Coast Guard requested that the occupants make a claim of nationality. For the vessel, none of the occupants claim nationality for the vessel. The Coast Guard determined the vessel is subject to the jurisdiction of the United States. He said that being in international waters is not a requirement. Not under the statute, your honor. So, could the Congress act. They reach criminal conduct on board a stateless vessel flying off the coast of Italy. In Italian waters, your honor, then I think we'd run into constitutional questions. You know, does it fall under the felonies clause on the high seas combined with the necessary and proper clause? There'd be various constitutional. Well, your honor, we have applied the government has applied cases to. People on land in foreign countries, so that's not a point that the government's going to concede. But what I would say is that it's a constitutional argument. That's not implicated by this case because they were on the high seas. That comes under where that's happened. The line of cases that talks about Congress can have a statute that excludes extraterritorially or extra jurisdictionally as long as the intent is expressed. That's how you get there. I believe the constitutional provision is felonies clause combined with the necessary and proper clause to rope in co conspirators. But again, the court should not reach you here. You know, but but again, I can't, I will not be conceding that point here, but it's it's a constitutional issue not not a statutory issue. Turning to the. I would have some points to make on the not being the felony clause does not incorporate international law. Certainly, there's some sources indicating that, you know. The founders were concerned with being able to meet with international to meet their obligations under international law and international law was important, but we don't think that there's a base a sufficient basis to say there's anything in the Constitution that requires us to be bound by it. And that's consistent with the other constitutional provisions that touch on international relations. No other provision has been held to limit Congress's authority to deviate from international law. And while we say that 70502 D1C is not implicated here, to the extent, it was the question of a definition of statelessness between the ability to define. Which provides definition this affinity and makes Claire makes more clear what may not be entirely clear under international law, combined with the necessary proper clause, which would give similar provisions and the provisions of international law. The Lotus principle, which requires a clear prohibition before something is not permitted would allow Congress to define it as it did in 70502 D1C that we don't think that's implicated here. And just the last point we would make international law permits and interdicting vessel to treat a vessel as stateless where nationality is not confirmed where a vessel is stateless and we would cite to. Supreme Court cases and we cited them in our brief and several circuit court cases as well. And that's consistent with the basic territorial principles that if you can exercise jurisdiction over the vessel, you can exercise jurisdiction over the. Unless the court has further questions for me. I'm done. I think we're good on the 20 letter that judgment key referenced earlier. So don't worry about that. Thank you. Your honor. I'd like to start off with what judge Friedman post opposing counsel. If there's no markings on the vessel, and the phone calls made to Columbia, Columbia could say, we can't tell. The next question should be, does it even have to be registered under Colombian law. Article 94 of the Convention of Law of Sea recognizes that small vessels are excluded. So it very well could be that under Colombian law, the vessel didn't need to be registered. And so in that case, the oral claim of nationality is sufficient. Indeed, the statute itself contemplates an oral claim of nationality or oral claim of registry. But registry is by definition, a matter of domestic law of the law of the country that has the registration requirements. So if the country in this case Columbia did not have a registration requirement. There would be no registry. And so the only thing left would be the nationality and the oral claim of nationality. I submit would be sufficient. I submitted that the statute contemplates that. And so the vessel or the. And so that's why a master can make an oral claim nationality. That's just the way it's been under international law for centuries, and which is which is why to go back to judge Freeman's. So if Columbia says it doesn't need to be need to be registered under Colombian law. The next question should have been. Do you do you Columbia give consent for us to exercise jurisdiction, the statement of no objection under the statute. And if the answer is yes, no problem. If the answer is no. Then the United States needs to needs to respect the sovereignty of Columbia, in particular because Columbia did not sign the Treaty of San Jose. So, this is a, to me, a very, very structured path of like, what needs to be asked when what the responses need to be, and what needs to be done. I don't view this as as particularly uncontroversial, but perhaps I'm wrong, but. You only the coast guard only has to ask for a statement of no objection if the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality. Right? So, I know we talked about registry and nationality being. And the disjunctive right, but so, but that particular passage. Uses both right. So, so. If we're looking at. D1C, so, so this would only even see would only be applicable in a scenario where the master or individual in charge and makes a claim of registry, which we know did not happen here. And and where the claims nation of registry here, even if it were Columbia, even though there was none right does not affirmatively and unequivocally assert that. So, I just, I see multiple places here where, where we can't possibly be in a D1C scenario. But, but the, the claim of nationality registries and subsection E and subsection 3 talks about a verbal claim of nationally or registry. So, from my perspective, like. If 1 makes a verbal claim of nationality by the master, which is, I believe what was done here, that is a claim of nationality. And so once you get a claim of nationality, then then you're kicked into C1 and then then requires the, the statement of no objection. So, I guess I feel like you're changing positions a bit about whether nationality of the master. Is equivalent to the nationality of the vessel or whether you're saying there was, in fact, a verbal claim of nationality of the vessel. Well, which is the nationality of a vessel. That is not not registered tax on to the nationality of the master. So, to give an example, it's not a small vessel. Even for a boat that is not a small vessel? For not a small vessel, we're in a different, we're in a different story, right? Which is, but I submit that the small vessels, we're talking about 24 meters or less, right? That that is. Under the international and under the treaty, the UN. Under UNCLOS, yes. And so these are all factual issues that should have been parsed out at the evidentiary hearing. And, and how do you reconcile that with the stipulated facts or the factual basis for the plea, where the agreement reads. None of the occupants claim nationality for the vessel. I think there is, is, is perhaps where me and the opposing counselor are talking past each other. I'm of the view that when an individual. In particular, an uneducated individual from, you know, like, like what happened in this case is asked, where are you from? And he says, I'm from Columbia. Here's my documentation. Right? And that is sufficient for nationality of the vessel. You don't need to say in what I view as fairly technical MDLA language. Sir, is this vessel, can you claim the nationality of this vessel? I would think that most individuals, myself included. The factual basis that it was stipulated to does not suffice is what you're telling me. Yeah, right. But you stipulated to it. Well, I factual basis for the plea. And now you're telling me that that's that that factual basis for the please doesn't satisfy the elements. Us, the Coast Guard requested that the occupants make a claim of nationality before for the vessel, right? None of the occupants claimed nationality of the vessel. But, but my point is, when you a claim of where you're from, and all claim of nationality of the master that tax. So, the fact that the that the question is like, sir, what is this nationality of the vessel, and the individual. I understand you are, but it contradicts your factual basis for the plea. Because when this person pled, he said, I've satisfied the elements of the offense. And now you're telling me that that doesn't satisfy the elements of the offense because simply the national claiming nationality of the individual doesn't satisfy the statute. Yes, that's what I'm saying. That's what I'm saying. I don't view. That is, is that the the nationality of the individual being being synonymous with nationality of the vessel. Is there any issue about whether or not this is a small vessel in the technical sense? I think so. I think it's less than 24 meters. I, like, it's my. And I could be wrong. Right. And I don't want to go out and I won't take a position on that hill. But for most of my MDLA cases. These are small vessels. These, these, in terms of what's on the record was stipulated to there's no stipulation that this is a small vessel and therefore outside of the registration requirements of the MDLA. True. And there's also no stipulation that that is a large vessel that would kick it into effect remains saying you're right. Right. And there is no stipulation that the individual who asked, you know, was was authorized to do so under the statute. So I understand that perhaps I'm trying to to fit my argument into a legal pinhole. But the language of of this of the stipulation did not talk about the actual individual who made the question that he or she was was  And I think that's the question is if it goes to subject matter jurisdiction and the fact there's a issue of fact is a big problem. And and and we can't determine an appeal. Correct. Correct. So, my time is run over. Thank you. And I asked the court. They hate the decision below and remand for an evidentiary. Thank you. Go further with that sentence into what jurisdiction. Break down into what facts had to be established and that's why I keep pressing you on the vessel. And whether the whether the individual who made him from the Coast Guard was was authorized to do so. And we can go through this again and again and again and again if you don't misunderstand me.   I can do the Mayor says beer case where governed for folks didn't and proceed to get the case dismissed. Michelle along our case. Yep. If you need a break. All right, thank you, Mr sleeper. I think your work is done here today.